**In the Matter of the ESTATE of Edward Jackson ALLEN, Deceased Plaintiff**

**v.**

**WAL–MART STORES, INC. ASSOCIATES' HEALTH AND WELFARE PLAN Defendants**

**No. 2:00CV206 SMR.**

United States District Court, E.D. Arkansas, Eastern Division.

Feb. 15, 2002.

Louis A. Etoch, Etoch and Halbert, Helena, AR, for Kathy Livingston.

Thomas H. Lawrence, John M. Russell, Lawrence & Russell, LLP, Memphis, TN, for Wal-Mart Stores, Inc. Associates' Health and Welfare Plan.

## ORDER

STEPHEN M. REASONER, District Judge.

Kathy Allen, as Administratrix of the Estate of Edward Allen, deceased ("Estate"), filed a Petition in Interpleader in the Phillips County Probate Court on October 5, 2000. Wal–Mart Stores, Inc., Associates' Health and Welfare Plan ("Plan") removed the case to this Court alleging a federal questions involving the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001–1461.

**Background:**

On or about March 5, 2000, Edward Jackson Allen, age 70, died as a result of complications from burns he sustained in an explosion at a local auto repair shop in Phillips County, Arkansas on February 4, 2000 Mr. Allen's wife, Nora Allen, was an employee at Wal–Mart Stores, Inc. ("Wal–Mart") at the time of the explosion. Mr. Allen was an insured under the Plan for medical benefits as a result of his wife's employment with Wal–Mart.

Subsequent to the explosion on February 4, 2000, but prior to his death on March 5, 2000, Mr. Allen incurred medical expenses in excess of $226,325.40. The Plan, as Mr. Allen's insurance carrier, negotiated with the medical care providers and paid on behalf of Mr. Allen $129,243.27 as full payment of Mr. Allen's medical expenses relating to the explosion and his subsequent death.

The Estate retained an attorney and filed a wrongful death case against the auto repair shop. The auto repair shop had limits of liability and med-pay insurance in the total amount of $301,675.44. The Estate reached a settlement on the

wrongful death claim agreeing to accept said limits of liability and med-pay insurance of $301,675.44. On or about August 11, 2000 after conducting a hearing, the Probate Court of Phillips County entered an Order authorizing compromise of the wrongful death claim and approving a partial distribution. The following partial distributions were approved and made: first the Estate paid a twenty-five percent contingent attorney's fee plus costs to its attorney in the total amount of $75,856.75; second, Nora Allen, wife of the deceased, received $30,000; and third, the six children of the deceased received $10,000 each. This left a balance of $135,818.69.

At issue here is what part, if any, of the $129,237.85 paid by the Plan towards Mr. Allen's medical expenses are the wrongful death beneficiaries required to pay from the wrongful death settlement proceeds? The Plan contends it is entitled to 100% subrogation and should receive the entire $129,237.85 check. The Estate contends the Plan is not entitled to any of the settlement proceeds, or alternatively, only a reduced amount.

**Standard of Review:**

██ The Plan submits, and the Court finds, that here, "the administrator was given discretionary authority to determine the eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)[1]. When such discretionary authority is given to the plan, the district court reviews the plan administrator's decision only for "abuse of discretion." *Id.* "The proper inquiry under the deferential standard is whether 'the plan administrator's decision

was reasonable; i.e. supported by substantial evidence'". *Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir. 1997).

**Contentions:**

The Estate argues that: (1) pursuant to the Arkansas Wrongful Death statutes, settlement proceeds pass directly to the wrongful death beneficiary and do not become part of the Estate; (2) the Plan terms do not establish an obligation to reimburse 100%; and (3) the Beneficiaries allegedly were not "made whole".

The Plan argues that the wrongful death statute is preempted by ERISA and that because the decision of the Plan's Administrative Committee to require 100% reimbursement was not arbitrary and capricious, the Court should order the Estate of Mr. Allen to reimburse the Plan $129,237.85 out of a $301,675.44 settlement obtained in Mr. Allen's wrongful death claim.

**Findings and Conclusions:**

██ With respect to the Estate's argument that the Arkansas wrongful death statute precludes the Plan's reimbursement, the Court finds this state law is preempted by ERISA. The ERISA statute provides that "[t]he provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

The United States Supreme Court instructed, in a similar context, that "to determine whether a state law has the forbidden connection, [the Court] look[s] both to 'the objectives of the ERISA statute as

---

1.  The Plan provides that:

    The Plan Administrator [The Administrative Committee] shall have complete discretion to interpret the provisions of the Plan, make findings of fact, correct errors, and supply omission. All decisions and interpretations

    of the Plan Administrator made in good faith pursuant to the Plan shall be final, conclusive and binding on all persons, subject only to the claims procedure and may not be overturned unless found by a court to be arbitrary and capricious.

a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the law on ERISA plans." *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). The Court held that a state law governing probate distribution which also affects the manner in which health benefits are paid to and from an ERISA-covered plan is preempted by ERISA. The Court rejected an argument similar to the argument made by the Estate in this case:

> Petitioner argues that the Washington statute has an impermissible connection with ERISA plans. We agree. The statute binds ERISA plan administrators to a particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than those identified by the plan documents. The statute thus implicates an area of core ERISA concern. In particular, it runs counter to ERISA's commands that a plan shall "specify the basis on which payments are made to and from the plan," 1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," § 1104(a)(1)(D) . . . .

*Egelhoff*, 523 U.S. at 146, 121 S.Ct. 1322 at 1327.

Here, as in Egelhoff, the Plan terms yield a different result as to how plan assets are to be recovered than how the Arkansas Wrongful Death Statutes does. The wrongful death statute would allow the monies recovered by the Estate to pass to the beneficiaries without being subject to the Plan's reimbursement provision. However, the Plan is not so limited:

> The Plan has the right to [ ] reduce or deny benefits otherwise payable by the Plan and [ ] recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf . . . to the extent of any and all of the following payments: Any judgment, settlement, or any payment made or to be made relating to the accident, including but not limited to other insurance.

Other courts, in the wrongful death context, have reached conclusions similar to that of the *Egelhoff* Court. See e.g., *McInnis v. Provident Life & Accident Ins. Co.*, 21 F.3d 586, 588 (4th Cir.1994); *Cox v. Shalala*, 112 F.3d 151 (4th Cir.1997).

■ With respect to the Estate's argument that it would be inequitable to require full reimbursement since the beneficiaries were not fully compensated by the wrongful death settlement, the Court finds this argument precluded. The Plan provides:

> The Plan requires you or your covered dependent to cooperate in order to guarantee reimbursement to the Plan from third party benefits. . . . You or your covered dependents may not do anything to hinder reimbursement or overpayment to the Plan after you have accepted benefits.
>
> These rights apply regardless of whether such payments are designated as payment for, but not limited to:
>
> ● Pain and suffering;
> ● Medical benefits;
> ● Other specified damages; or
> ● Whether the participant has been made whole (i.e. fully compensated for his/her injuries) . . . .

The Plan has first priority with respect to the right to reduction, reimbursement, and subrogation.

The Plan explicitly disclaims the make-whole rule in the Associates Benefits Book. The Estate acknowledges that Ms. Nora Allen signed a Reimbursement–Subrogation Agreement on March 4, 2000, recognizing and affirming the Plan's right to

subrogation. Additionally, the Estate agreed upon the disbursement ultimately approved by the Probate Court.

Furthermore, when the Estate agreed to settle all potential claims with the responsible party, it breached the terms of the Plan and attempted to eliminate the Plan's right to bring suit against the responsible third party. The Plan specifically grants itself the "right to file suit on the participant of his/her dependents behalf for the condition related to the medical expenses to recover benefits paid or to by paid by the Plan." The Plan also provided that the Plan participant and his or her dependents must "cooperate in order to guarantee reimbursement to the Plan from third party benefits": and further states that "failure to aid the plan and to comply with such requests may result in the Plan withholding or recovering benefits, services, payments or credits are due or paid by under the Plan."

The Court finds the Plan's determination that the reimbursement right is not limited to amounts recovered by the actual plan participant, but extends to any amount recovered that is related to an accident is not arbitrary and capricious. The finding that the wrongful death recovery "related to the accident" was also not arbitrary and capricious.

■ The Estate's final argument is that Mr. Allen's beneficiaries incurred a twenty-five percent attorney's fee for maintaining the wrongful death action. It argues that equitable principles, such as subrogation, require that the Plan share the costs of collection. However, the Plan provides that "[a]ll attorney's fees and court costs are the responsibility of the participant, not the Plan". The Court finds the Plan administrator's decision to allow complete

recovery of the $129,237.85 is not arbitrary and capricious.