# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AIR CONDITIONING AND
REFRIGERATION INSTITUTE; GAS
APPLIANCE MANUFACTURERS
ASSOCIATION; ASSOCIATION OF HOME
APPLIANCE MANUFACTURERS;
NATIONAL ELECTRICAL
MANUFACTURERS ASSOCIATION,
        *Plaintiffs-Appellees,*

        v.

ENERGY RESOURCES
CONSERVATION AND DEVELOPMENT
COMMISSION; WILLIAM J. KEESE,
Chairman; ROBERT PERNELL,
Commissioner; AURTHUR H.
ROSENFELD, Commissioner; JAMES
D. BOYD, Commissioner; JOHN L.
GEESMAN, Commissioner,
        *Defendants-Appellants.*

No. 03-16621

D.C. No.
CV-02-02437-
WBS/PAN

AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Chief Judge, Presiding

Argued and Submitted
November 1, 2004—San Francisco, California

Opinion Filed February 3, 2005
Amended June 3, 2005

Before: Betty B. Fletcher, John T. Noonan, and
Sidney R. Thomas, Circuit Judges.

6091

Opinion by Judge Thomas;
Dissent by Judge Noonan

**COUNSEL**

William M. Chamberlain, Jonathan Blees, Monica Schwebs, Paul A. Kramer, Jr., William W. Westerfield III, Sacramento, California, for the appellants.

John A. Hodges, Bruce L. McDonald, Dineen Pashoukos Wasylik, Peter J. Riehm, Wiley Rein & Fielding LLP, Washington, D.C., for the appellees.

**OPINION**

THOMAS, Circuit Judge:

This case presents the question of whether federal law preempts California's appliance regulations requiring appliance manufacturers to submit data about their appliances to Cali-

fornia's Energy Resources Conservation and Development Commission ("Commission"), mark their appliances with basic information such as brand name and energy performance, and be subjected to related compliance and enforcement rules. We conclude that federal law does not preempt California's regulations. We therefore reverse the district court's decision finding the regulations preempted and permanently enjoining the Commission from enforcing these regulations, vacate the injunction, and remand.

I

California boasts an extensive and laudable appliance efficiency program. As part of California's program, the Commission has, since 1977, required manufacturers to submit data to it. The data collected by the Commission pursuant to section 1606 of Title 20 of the California Code of Regulations is maintained in an electronic database, which contains information on over 135,000 appliance models. The Commission's database provided the foundation of information for the Environmental Protection Agency's Energy Star program and is used frequently by consumers, energy consultants, contractors, researchers, utility program managers, manufacturers, and other governmental agencies. As part of California's appliance program, the Commission also requires manufacturers to put basic information—such as the manufacturer's brand name and the appliance's size and energy performance—on their appliances. Cal. Code Regs. tit. 20, § 1607(b)-(d)(2). The Commission enforces the data submittal and marking requirements it places on manufacturers under section 1608. Cal. Code Regs. tit. 20, § 1608.

Plaintiffs-Appellees, four major trade organizations representing appliance manufacturers nationwide ("Trade Associations"), claim that these California regulations are preempted by the Energy Policy and Conservation Act, Pub. Law No. 94-163, 89 Stat. 871 (1975) ("EPCA"), specifically by 42 U.S.C. §§ 6297(a) and 6316(a)-(b). After these regulations

were adopted but before they went into effect, Trade Associations filed suit for declaratory and injunctive relief in the United States District Court for the Eastern District of California. The district court held that the California regulations are preempted. The court, first preliminarily and then permanently, enjoined the Commission from enforcing the regulations. The Commission timely appealed.

We review the district court's decision regarding preemption *de novo*, *Chamber of Commerce v. Lockyer*, 364 F.3d 1154, 1160 (9th Cir. 2004), and the district court's grant of permanent injunction for abuse of discretion, *Ting v. AT&T*, 319 F.3d 1126, 1134-35 (9th Cir. 2003).

## II

Preemption can occur in one of three ways: express preemption by statute, occupation of the field, or conflict between state and federal regulation. *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990). All parties agree that this case presents a question of express preemption. Thus, this case boils down to the interpretation of the statutory provision that allegedly preempts state law. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992).

[1] To determine whether California's regulations are preempted by EPCA, we are instructed to first " 'identify the domain expressly pre-empted' by that language." *Medtronic*, 518 U.S. at 484 (quoting *Cipollone*, 505 U.S. at 517). "Since pre-emption claims turn on Congress's intent, we begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (internal citations omitted).

**[2]** Our interpretation of the federal statute is informed by two presumptions about the nature of preemption. *Medtronic*, 518 U.S. at 485. First, we address claims of preemption with the starting presumption that Congress did not intend to supplant state law. *Id.* Where, as is the case here, the State regulates in an area where there is no history of significant federal presence, *United States v. Locke*, 529 U.S. 89, 108 (2000),[1] we assume that the "historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). This presumption against preemption leads us to the principle that express preemption statutory provisions should be given a narrow interpretation. *Id.*; *Cipollone*, 505 U.S. at 518.

Second, our analysis of the scope of the statute's preemption is guided by the Supreme Court's oft-stated comment that "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic*, 518 U.S. at 485 (internal quotations marks omitted). "As a result, any understanding of the scope of a pre-emption statute must rest primarily on 'a fair understanding of congressional purpose.' " *Id.* at 485-86 (quoting *Cipollone*, 505 U.S. at 530, n. 27) (emphasis omitted).

---

[1]*Compare infra* Part III.A (discussing legislative history of EPCA), *with Locke*, 529 U.S. at 108 (finding the presumption against preemption does not apply where the federal interest in the area the State enacted legislation in, interstate navigation, "has been manifest since the beginning of our Republic"), *and Ting*; 319 F.3d at 1136 (finding that the presumption against preemption does not apply "because of the long history of federal presence in regulating long-distance telecommunications"), *and Bank of Am. v. City & County of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002) (finding that the presumption against preemption does not apply because of the history of significant federal presence in national banking), *and Sky-sign Int'l, Inc. v. City & County of Honolulu*, 276 F.3d 1109, (9th Cir. 2002) (finding that presumption against preemption does not apply where aerial signage ordinance specifically targeted navigable airspace, an area where there is a history of significant federal presence).

Also relevant to our interpretation of the scope of the statute's preemption are the "structure and purpose of the statute as a whole, as revealed not only in the text, but through [our] reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* at 486 (internal citation and quotation marks omitted).

## III

Thus, we turn to the language of the express preemption provision at issue. 42 U.S.C. § 6297[2] provides, in relevant part:

> (a) Preemption of testing and labeling requirements
>
>> (1) Effective on March 17, 1987, this part supersedes any State regulation insofar as such State regulation provides at any time for the disclosure of information with respect to any measure of energy consumption or water use of any covered product if —
>>
>>> (A) such State regulation requires testing or the use of any measure of energy consumption, water use, or energy descriptor in any manner other than that provided under section 6293[3] of this title; or

---

[2]42 U.S.C. § 6316(a)-(b), the other preemption provision at issue in this case, incorporates § 6297(a) with a few subtle distinctions that are not relevant to this case. 42 U.S.C. § 6316(a)-(b) relates to commercial and industrial appliances whereas § 6297(a) relates to residential appliances. Hereinafter, when we refer to 42 U.S.C. § 6297(a), in doing so, we also refer to § 6316(a)-(b).

[3]42 U.S.C. § 6293 establishes federal appliance testing requirements.

(B) such State regulation requires disclosure of information with respect to the energy use, energy efficiency, or water use of any covered product other than information required under section 6294[4] of this title.

42 U.S.C. § 6297.

## A.   Data Submittal Regulations

The first California regulation that 42 U.S.C. § 6297(a) arguably preempts is Cal. Code Regs. tit. 20, § 1606, which requires appliance manufacturers to submit specified information to the Commission for each appliance for sale or sold in California. Such information includes the name of the manufacturer, the brand name, the model number, and data produced during tests the manufacturer is required to perform under Cal. Code Regs. tit. 20, § 1604. *See* Cal. Code Regs. tit. 20, §§ 1606(a), Table U.

To determine whether 42 U.S.C. § 6297(a) preempts the data submittal requirements of Cal. Code Regs. tit. 20, § 1606, we look to the text of § 6297(a). Section 6297(a) preempts any state regulation that provides "at any time for the disclosure of information with respect to any measure of energy consumption or water use of any covered product if . . . such State regulation requires disclosure of information with respect to the energy use, energy efficiency, or water use of any covered product other than information required under section 6294." The district court found the text of § 6297(a), in particular the meaning of the phrase "disclosure of information," ambiguous, and so do we.

Beginning with the presumption that Congress did not intend to supplant state law, we must narrowly interpret

---

[4]42 U.S.C. § 6294 establishes federal appliance labeling requirements.

§ 6297(a) in general, and the phrase "disclosure of information" in particular. *See Medtronic*, 518 U.S. at 485. A narrow interpretation is consistent with our direction to find preemption when preemption is the "clear and manifest purpose of Congress." *Id.* The narrow interpretation the Commission advances is supported by the statutory text and is consistent with Congress's purpose. Applying a narrow interpretation of § 6297(a), we hold that it does not preempt the data submittal requirements contained in Cal. Code Regs. tit. 20, § 1606.

The rules of statutory construction support the narrow interpretation of "disclosure of information." One rule of statutory construction is that "identical words used in different parts of the same act are intended to have the same meaning." *Commissioner of Internal Revenue v. Lundy*, 516 U.S. 235, 250 (internal citations and quotation marks omitted). The phrase "disclosure of information" is used twice in § 6297(a)(1) and should be given the same meaning in both instances. In § 6297(a)(1), "disclosure of information" concerns information with respect to any measure of energy consumption or water use. In § 6297(a)(1)(B), "disclosure of information" requires manufacturers to place certain information on consumer-directed product labels, as required by 42 U.S.C. § 6294. *See* 42 U.S.C. § 6294. In both instances, "disclosure of information" may be interpreted to generally refer to the disclosure of information on labels directed to consumers at point of sale or use. Thus, a narrow interpretation of § 6297(a)(1) is supported by the statutory text, and this interpretation should be applied.

Furthermore, the statute as a whole compels a narrow interpretation of "disclosure of information." Congress did not use the phrase "disclosure of information" in EPCA when it referenced manufacturers providing data to the Department of Energy ("DOE"); instead, Congress used the phrase "submit information or reports." 42 U.S.C. § 6296(d). 42 U.S.C. § 6296(d) allows the DOE to require appliance manufacturers to provide the DOE with information about energy efficiency.

42 U.S.C. § 6296(d) provides, in relevant part, "the Secretary may require . . . each manufacturer of a covered product to *submit information or reports* to the Secretary." *Id.* § 6296(d)(1) (emphasis added). When Congress referred to the submittal of data to a government entity in EPCA, it used the phrase "submit information or reports," not "disclosure of information." The statute as a whole does not support a broad interpretation of "disclosure of information." On the contrary, it suggests that "disclosure of information" only pertains to labeling directed to consumers at point of sale or use.[5]

In addition, the narrow interpretation of "disclosure of information" rests on "a fair understanding of congressional purpose" as evidenced by the relevant legislative history. *Medtronic*, 518 U.S. at 485-86 (quoting *Cipollone*, 505 U.S. at 530, n.27) (internal quotation marks and emphasis omitted). The original version of the current labeling and testing pre-emption provision was first enacted in the EPCA, Pub. Law No. 94-163, 89 Stat. 871 (1975). Its purpose appears to be unchanged since then.

Congress enacted EPCA in 1975, in the aftermath of the oil

---

[5] The narrow interpretation of the phrase "disclosure of information" is also supported by the relevant FTC regulations. 16 C.F.R. Part 305 establishes regulations regarding the consumer-directed labeling of appliances and the testing required to accurately label appliances. 16 C.F.R. pt. 305. Part 305 also includes regulations pertaining to the form and content of the labels, §§ 305.11-.14, and the testing manufacturers must perform in order to label with information regarding their appliances' energy efficiency or use, §§ 305.5-.10. The sections pertaining to the form and contents of the labels are clustered under the heading of "Required Disclosures." Section 305.8, which requires manufacturers to submit annually to the FTC a report listing the annual energy consumption or energy efficiency rating for each basic model in current production, is titled "Submission of data." The FTC regulations use "disclosure" to refer to consumer-directed labeling and "submission" to refer to data-submittal to a government entity. Therefore, the FTC regulations, like EPCA, use "disclosure" to refer to consumer-directed labeling and "submission" or "submit" to refer to data-submittal to the government.

embargo imposed against the United States by certain countries in the years prior. *Natural Res. Def. Council v. Herrington*, 768 F.2d 1355, 1364 (D.C. Cir. 1985). The oil embargo called attention to the serious economic and national security problems associated with our nation's continued reliance on foreign energy resources. *Id.* In response, President Ford called for "the strongest and most far-reaching energy conservation program we have ever had." *Id.* (quoting 11 Weekly Comp. Pres. Doc. 40, 41 (Jan. 20, 1975)) (internal quotation marks omitted). Subsequently, Congress enacted EPCA, and in doing so, established a comprehensive energy policy. *Id.*

EPCA was designed, in part, to reduce the United States' "domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs." S. Rep. No. 94-516, at 117 (1975), *reprinted in* 1975 U.S.C.C.A.N. 1956, 1957. Part of EPCA's energy conservation program was to "[r]equire energy labeling of major home appliances and certain other consumer products, and authorize energy efficiency standards for major appliances." *Id.* at 118. Congress believed that better informed consumers and voluntary efforts by manufacturers would make energy efficiency standards unnecessary. H. Rep. No. 94-340, at 95 (1975), *reprinted in* 1975 U.S.C.C.A.N. 1762, 1857. Therefore, Congress required manufacturers to label their appliances and provided that the Secretary of the Federal Energy Administration should utilize energy efficiency standards if the labeling program proved ineffective. *Id.* at 99. As a result, EPCA's express preemption provisions dealt primarily with the possibility that states would adopt different test procedures or consumer labeling requirements. *See* Pub. Law No. 94-163, § 327, 89 Stat. 871, 926-27. EPCA preempted state regulations insofar as they were "other than" the applicable federal rules for testing and labeling. *Id.* § 327(a)(1), 89 Stat. at 927. EPCA, however, allowed state regulations that differed from the federal regulations if the state regulations were justified by a substantial state or local need, did not interfere with

interstate commerce, and were more stringent than the federal standard. *Id.* § 327(b)(2), 89 Stat. at 927.

The National Energy Conservation and Policy Act, Pub. L. No. 95-619, 92 Stat. 3206 (1978) ("NECPA"), amended portions of EPCA's preemption provisions. States were still allowed to adopt regulations identical to federal regulations. *See* EPCA § 327(a)(2), 89 Stat. at 927. States were allowed to prescribe regulations more stringent than federal regulations — or, if there was no federal regulation, a state could implement its own standard — *only* if the Secretary found there was a significant state or local interest to justify the state's regulation and the regulation would not unduly burden interstate commerce. NECPA § 424(a), 92 Stat. at 3264. NECPA did not amend EPCA's preemption provisions regarding testing or labeling. *Id.*

On a larger scale, NECPA created a nationwide conservation program for appliances and required the DOE to prescribe minimum energy efficiency standards for thirteen covered products. *Herrington*, 768 F.2d at 1367; *see* H.R. Rep. No. 95-1751, at 114 15 (1978). However, instead of adopting energy efficiency standards, the DOE concluded in 1982 that establishing minimum energy efficiency standards for the relevant appliances would not result in significant energy conservation and would not be economically justified. H.R. Rep. No. 100-11, at 27. Thus, the DOE determined no efficiency standards were required under NECPA. *Id.* "While DOE adopted its policy of the 'no-standard' standards, it also initiated a general policy of granting petitions from States requesting waivers from preemption. As a result, a system of separate State appliance standards ha[d] begun to emerge and the trend [was] growing." S. Rep. No. 100-6, at 4. The D.C. Circuit held that the DOE erroneously concluded that "no-standard" standards was appropriate and instructed the DOE to adopt federal efficiency standards. *Herrington*, 768 F.2d at 1433.

Because the DOE could not establish federal appliance efficiency standards immediately, major manufacturer trade associations and the Natural Resources Defense Council negotiated a compromise solution, which Congress enacted as the National Appliance Energy Conservation Act of 1987, Pub. L. No. 100-12, 101 Stat. 103 (1987) ("NAECA"), codified at 42 U.S.C. §§ 6291-6309. H.R. Rep. No. 100-11, at 27-28; S. Rep. No. 100-6, at 4-5, *reprinted in* 1987 U.S.C.C.A.N. 52, 54-55. NAECA established federal energy efficiency standards for residential appliances; DOE action was not required to set these standards. NAECA § 5, 101 Stat. at 107-17.

NAECA also amended NECPA's preemption provisions. NAECA provided that states could no longer adopt energy efficiency standards that were identical to the federal standards. 42 U.S.C. § 6297(c). NAECA also made it more difficult for states to obtain waivers of preemption for more stringent state efficiency standards; in order to obtain a waiver, NAECA required states to establish by a preponderance of the evidence that state regulation was justified by unusual and compelling state or local interests. 42 U.S.C. § 6297(d)(1)(B)-(C); *see* S. Rep. No. 100-6, at 9. The reason for the broader preemption standards was to counteract the systems of separate state appliance standards that had emerged as a result of the DOE's "general policy of granting petitions from States requesting waivers from preemption," which caused appliance manufacturers to be confronted with "a growing patchwork of differing State regulations which would increasingly complicate their design, production and marketing plans." S. Rep. No. 100-6, at 4. As for the preemption provisions regarding testing and labeling, NAECA, "essentially restate[d] existing law, and provide[d] that the Act supersedes State and local regulations regarding testing and labeling in certain cases." *Id.* at 9.

The latest legislation amending EPCA is the Energy Policy Act of 1992, Pub. L. No. 102-486, 106 Stat. 2776 (1992) ("EPAct"), codified at 42 U.S.C. §§ 6311-17, which expanded

the federal appliance program to include energy efficiency standards for commercial and industrial appliances. 42 U.S.C. §§ 6295(j)-(k), 6313. EPAct incorporated the preemption provisions of 42 U.S.C. § 6297, with a few subtle distinctions, which are not relevant to this case. 42 U.S.C. § 6316(a)-(b). EPAct's legislative history is silent on preemption.

[3] In sum, the legislative history of the relevant Acts supports a narrow interpretation of the preemption provision. There is no indication that Congress, in the preemption provision of EPCA as amended by subsequent Acts, intended to preempt state regulations requiring the submission of data to state government agencies. The legislative history instead demonstrates that Congress intended to preempt state energy efficiency standards, testing procedures, and consumer labeling requirements. We therefore conclude that because "disclosure of information" only refers to consumer-directed labeling at point of sale or use, Cal. Code Regs. tit. 20, § 1606 is not preempted by U.S.C. § 6297(a)(1).[6]

B.   Marking Regulations

The second set of California's regulations the Trade Associations argue is preempted by federal law are the appliance-marking requirements of sections 1607(b), (c), (d)(1), and (d)(2) of Title 20 of the California Code of Regulations.

Section 1607(b)[7] and (c)[8] of Title 20 of the California Code

---

[6]We also hold that Cal. Code Regs. tit. 20, § 1606 is not preempted by 42 U.S.C. § 6316(a)-(b), which is substantively the same as § 6297(a)(1).

[7]Cal. Code Regs. tit. 20, § 1607(b) provides:

Except as provided in subsection (c), the following information shall be permanently, legibly, and conspicuously displayed on an accessible place on each unit;

(1) manufacturer's name or brand name or trademark;

(2) model number; and

of Regulations—which require appliances to be labeled with the manufacturer's name, brand name, or trademark; the appliance's model number; and date of manufacture—are not preempted by federal law because the subsections do not "provide[ ] at any time for the disclosure of information with respect to any measure of energy consumption or water use of any covered product." 42 U.S.C. § 6297(a)(1).[9] The informa-

---

(3) date of manufacture, indicating (i) year and (ii) month or smaller (e.g. week) increment. If the date is in a code that is not readily understandable to the layperson, the manufacturer shall immediately, on request, provide the code to the Energy Commission.

*Id.* § 1607(b).

[8]Cal. Code Regs. tit. 20, § 1607(c), titled "Exceptions to Subsection (b)," provides, in relevant part:

(1) For plumbing fixtures and plumbing fittings, the information required by subsection (b) shall be permanently, legibly, and conspicuously displayed on an accessible place on each unit or on the unit's packaging.

(2) For lamps, the information required by subsection (b) shall be permanently, legibly, and conspicuously displayed on an accessible place on each unit, on the unit's packaging, or, where the unit is contained in a group of several units in a single package, on the packaging of the group.

*Id.* § 1607(c).

[9]"Measure of energy consumption" is defined as "energy use, energy efficiency, estimated annual operating cost, or other measure of energy consumption." 42 U.S.C. § 6291(8).

"Energy use" is defined as "the quantity of energy directly consumed by a consumer product at point of use . . . ." *Id.* § 6291(4). "Energy efficiency" is defined as "the ratio of the useful output of services from a consumer product to the energy use of such product . . . ." *Id.* § 6291(5). "Estimated annual operating cost" is defined as "the aggregate retail cost of the energy which is likely to be consumed annually, and in the case of showerheads, faucets, water closets, and urinals, the aggregate retail cost of water and wastewater treatment services likely to be incurred annually, in representative use of a consumer product . . . ." *Id.* § 6291(7).

"Water use" is defined as "the quantity of water flowing through a showerhead, faucet, water closet, or urinal at point of use . . . ." *Id.* § 6291(31)(A).

tion required to be placed on appliances under section 1607(b) and (c) is not "information with respect to any measure of energy consumption or water use" unless one expansively interprets "with respect to" and "measure of energy consumption," 42 U.S.C. § 6297(a)(1). In accordance with the presumptions informing our interpretation of express preemption provisions, we interpret these terms narrowly as such an interpretation is consistent with the statutory text.

[4] "Measure of energy consumption" is defined as "energy use, energy efficiency, estimated annual operating cost, *or other measure of energy consumption*." 42 U.S.C. § 6291(8) (emphasis added). We decline to interpret "other measure of energy consumption," the only relevant term left undefined in the statute, so broadly that it encompasses the information required to be placed on appliances under California's sections 1607(b) and (c). Under the maxim of statutory interpretation known as *ejusdem generis*, "or other measure of energy consumption" embraces only objects similar in nature to those enumerated by the preceding specific words. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001). "Or other measure of energy consumption" must be construed to give effect to the terms preceding the phrase and must be defined by reference to the terms preceding it. *Id.* at 115. Therefore, "or other measure of energy consumption" does not broaden the meaning of "measure of energy consumption," which is defined, in part, as: "the quantity of energy directly consumed by a consumer product at point of use," 42 U.S.C. § 6291(4); "the ratio of the useful output of services from a consumer product to the energy use of such product," *id.* § 6291(5); and "the aggregate retail cost of the energy which is likely to be consumed annually," *id.* § 6291(7). As such, "measure of energy consumption" does not encompass the information California requires manufacturers to place on their appliances, such as the manufacturer's name and the appliance's model number and date of manufacture.

The issue then becomes how to interpret "with respect to." The interpretation of the phrase "relates to" instructs us on

how to interpret the phrase "with respect to," as both phrases are similar in scope and meaning. The Supreme Court has stated that "the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminancy,' or else 'for all practical purposes pre-emption would never run its course.' " *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (quoting *Travelers*, 514 U.S. at 655). The Court has also "cautioned against an 'uncritical literalism' that would make pre-emption turn on 'infinite connections.' " *Id.* at 147 (quoting *Travelers*, 514 U.S. at 656). As Justice Scalia observed, "[e]verything is related to everything else." *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring). The issue is whether the relation is "indirect, remote, and tenuous" or not. *Californians For Safe & Competitive Dump Truck Transp. v. Mendoca*, 152 F.3d 1184, 1189 (9th Cir. 1998). The relation between placing a manufacturer's name, the model name, and the date of manufacture on an appliance and measures of energy consumption, as defined in EPCA, is indirect, remote, and tenuous.

**[5]** Therefore, we conclude that the marking requirements contained in sections 1607(b) and (c) of Title 20 of the California Code of Regulations are not preempted by EPCA.

**[6]** We also hold that section 1607(d)(1)[10] of the California

---

[10]Cal. Code Regs. tit. 20, § 1607(d)(1) provides:

(d) Energy Performance Information.

(1) Federally-Regulated Consumer Products.

The marking required by 16 C.F.R. Part 305 (2001) shall be displayed on all units of all federally-regulated consumer products of the following classes:

Refrigerators Refrigerator-freezers Freezers Central air conditioners Heat pumps Dishwashers Water heaters Room air conditioners Warm air furnaces Pool heaters Clothes washers Clothes dryers Fluorescent lamp ballasts Showerheads Fau-

regulations is not preempted by EPCA, as the section only requires compliance with federal marking requirements and, therefore, does not require the disclosure of information that is "other than information required" under federal law. 42 U.S.C. § 6297(a)(1). As the Fourth Circuit has stated, "if state law adopts or imposes a labeling requirement that is the same as the federal standard, even if the state law provides compensation or other remedies for a violation, so long as Congress chooses not to explicitly preempt the consistent law, it will not be said to be in conflict with federal law." *Worm v. American Cyanamid Co.*, 970 F.2d 1301, 1307 (4th Cir. 1992). This reasoning is supported by *Medtronic*, in which the Supreme Court stated that "[t]he presence of a [state] damages remedy does not amount to the additional or different 'requirement' that is necessary under the [federal] statute; rather, it merely provides another reason for manufacturers to comply with identical existing 'requirements' under federal law." 518 U.S. at 495. Because Cal. Code Regs. tit. 20, § 1607(d)(1) merely provides appliance manufacturers another reason to comply with existing requirements under federal law, the California regulation is not preempted.

The final marking regulation Trade Associations argues is preempted by federal law, Cal. Code Regs. tit. 20, § 1607(d)(2),[11] also does not require the disclosure of infor-

---

cets Water closets Urinals General service fluorescent lamps Incandescent reflector lamps Direct heating equipment Medium-base compact fluorescent lamps Cooking equipment (kitchen ranges and ovens).

Cal. Code Regs. tit. 20, § 1607(d)(1).

[11]Cal. Code Regs. tit. 20, § 1607(d)(2) provides:

(d) Energy Performance Information.

(2) Federally-Regulated Commercial and Industrial Equipment: Each unit of an appliance listed in Table V that is federally-regulated commercial and industrial equipment shall be marked, permanently and legibly on an accessible

mation "other than information required" under federal law, and is thus not preempted. Section 1607(d)(2) requires federally-regulated commercial and industrial equipment to be marked with information. The relevant preemption provision is located at 42 U.S.C. § 6316(a)-(b), which was enacted as part of EPAct.

[7] California regulation section 1607(d)(2) is not preempted because there are no federal labeling rules for the EPAct-covered equipment that are subject to California's marking requirements.[12] Where EPAct authorizes the DOE to take action that would preempt inconsistent state regulations, the DOE's inaction, without more, fails to preempt relevant state regulations.

Sections 6316(a) and (b) preempt "any State regulation insofar as such State regulation provides at any time for the disclosure of information with respect to any measure of energy consumption or water use . . . if . . . such State regulation requires disclosure of information . . . of any covered product *other than* information required" under federal law. 42 U.S.C. § 6297(a)(1) (emphasis added). Thus, state regulations are preempted at any time if they require the disclosure of information other than what is required under federal law.

The DOE's inaction alone cannot preempt state regulations. *See Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum*

---

and conspicuous place on the unit, with the applicable energy performance information shown in Table V, and such information shall also be included on all printed material that is displayed or distributed at the point of sale.

Cal. Code Regs. tit. 20, § 1607(d)(2).

[12]The DOE has adopted labeling rules for electric motors. 10 C.F.R. § 431.83. However, the California regulations on EPAct-covered equipment do not include electric motors; they cover only space heating, air-conditioning, and water heating equipment. *See* Cal. Code Regs. tit. 20, § 1607(d)(2), Table V.

*Corp.*, 485 U.S. 495, 503 (1988). "When a comprehensive federal scheme intentionally leaves a portion of the regulated field without controls, *then* the pre-emptive inference can be drawn—not from federal inaction alone, but from inaction joined with action." *Id.* Under EPAct, the DOE must prescribe labeling rules for classes of covered equipment for which the DOE has exercised its discretion to prescribe test procedures. 42 U.S.C. § 6315(a). The DOE has not prescribed test procedures for most classes of covered equipment, and therefore has not reached the decision of whether to prescribe labeling rules. There is no indication that the DOE's inaction was a conscious and express decision under 42 U.S.C. § 6315(h)[13] to not promulgate labeling rules for EPAct-covered equipment. "[I]t is essential that an agency declare, at a high degree of specificity, its intention that its *in*action preempt state law before we may assume such a desire and give it legal effect." *Baltimore & Ohio R.R. Co. v. Oberly*, 837 F.2d 108, 115 (3d Cir. 1988). As the DOE has not done so, we cannot hold that Cal. Code Regs. tit. 20, § 1607(d)(2) is preempted because it requires something "other than" what federal law does.

## C. Compliance and Enforcement Regulations

[8] Lastly, Trade Associations argue that California's procedural regulations, found at Cal. Code Regs. tit. 20, § 1608,[14]

(Text continued on page 6113)

---

[13]42 U.S.C. § 6315 provides:

The Secretary [of DOE] shall not promulgate labeling rules for any class of industrial equipment unless he has determined that—

(1) labeling in accordance with this section is technologically and economically feasible with respect to such class;

(2) significant energy savings will likely result from such labeling; and

(3) labeling in accordance with this section is likely to assist consumers in making purchasing decisions.

42 U.S.C. § 6315(h).

[14]Cal. Code Regs. tit. 20, § 1608, provides in relevant part:

(a) General Requirements for the Sale or Installation of All Appliances. Any unit of any appliance within the scope of Section 1601 may be sold or offered for sale in California only if:

(1) the appliance appears in the most recent database established pursuant to Section 1606(c), unless the only reason for the appliance's absence from the database is its failure to comply with an applicable standard in Section 1605.1 [the applicable federal efficiency standard];

(2) the manufacturer has:

(A) tested the appliance as required by Sections 1603 and 1604;

(B) marked the unit as required by Section 1607;

. . .

(b) Appliances Not in Database.

If the Executive Director determines that an appliance that is not in the database is being sold or offered for sale in California, he or she shall take appropriate legal action to restrain and discourage such sale or offering, including, but not limited to testing units of the appliance at the manufacturer's cost and seeking appropriate judicial action.

Cal. Code Regs. tit. 20, § 1608.

Furthermore, section 1608(e)-(g) requires the Executive Director of the Commission to periodically inspect appliances sold or offered for sale in California to determine whether they conform with the relevant energy efficiency and consumption standards. Cal. Code Regs. tit. 20, § 1608(e)(1). The Commission pays the costs of the initial testing. Cal. Code Regs. tit. 20, § 1608(f). If a tested, federally-regulated appliance performs worse than what is required under the applicable federal standard, the manufacturer must pay the cost for additional testing. Cal. Code Regs. tit. 20, §§ 1608(e)(2), (g), (f). The Executive Director informs the appropriate federal agency if the appliance's performance either is at variance with the results the manufacturer reported to the applicable federal agency or is not in compliance with the federal standard. Cal. Code Regs. tit. 20, § 1608(g). A federally-regulated appliance will be removed from the Commission's database due to its failure to comply with the applicable federal standard. Cal. Code Regs. tit. 20, §§ 1605(a)(1), 1608(c)(4), (d)(2)(B), (e)(2)(C).

that enforce the previously discussed substantive regulations are preempted because they impermissibly enforce federal requirements. If the Commission's substantive regulations, as we have found, are not preempted by federal law, then the Commission's relevant compliance and enforcement provisions are also not preempted. The power to regulate must include the complementary power to enforce those regulations. California's compliance and enforcement provisions are not preempted by federal law.

IV

For these reasons, we agree with the Commission that the relevant California regulations which require manufacturers to submit data about their appliances, mark their appliances, and be subjected to related compliance and enforcement rules are not preempted by federal law. We therefore reverse the district court's decision finding these regulations preempted, vacate the injunction preventing the Commission from applying these regulations, and remand for further proceedings consistent with this opinion.

**REVERSED, VACATED, AND REMANDED**

---

NOONAN, Circuit Judge, dissenting:

The statutes at issue, inferentially the result of negotiation and compromise, deliberately spell out what is preempted by federal law. State regulations preempted are those that require "disclosure of information with respect to the energy use, energy efficiency or water use . . . other than the information required under section 6294 of this title." 42 U.S.C. § 6297(a)(1)(B). Where federal regulations do not require disclosure of such information to the federal government, a state

is expressly prohibited from requiring such disclosure to consumers or to a state authority.

The majority opinion holds that the prohibition applies only to disclosure to consumers. The holding is a radical reduction of the key statutory term. "Disclosure," *Webster's Third New International Dictionary* (3d ed. 1993) informs us, is "the act or an instance of opening up to view, knowledge or comprehension." Disclosure to a state agency is as much an opening up to view of the data as disclosure to consumers would be. Congress has chosen a broad term to prevent the imposition by a state of the burden of disclosure. Just as the meaning of "disclose" is "to expose to view" or "to make known," so the substantive noun referencing such an act is so extensive that it encompasses every compulsory revelation of the relevant information. Palpably the statute is meant to preempt the state from entering the federal domain.

I do not ask for "a broad reading" of "disclosure," but for an exact reading of a broad term. Obviously where the information is going to consumers as required by 42 U.S.C. § 6294, the meaning of disclosure is narrowed by the audience referenced. But narrowing in such a context does not limit the generality of the statutory term when no special context restricts it. That Congress did not use the term "disclosure" when describing reports to DOE does not have bearing on Congress's intent when it found a single compendious way to say that manufacturers need not inform either the government or consumers.

Impatience with the restraints imposed by the precise preemptive words of the statute is also manifest when the majority deals with the phrase "other than" as the phrase refers to regulations other than federal regulations. 42 U.S.C. § 6316(a), (a)(4). Where there are no federal regulations on the subject because the DOE has not promulgated any regulations, then any state regulations are "other than" those federally required. The court indulges idiosyncratic imagination in

supposing that there must be federal regulations in existence for "other than" to apply. Au contraire, if nothing exists, any state regulations are other than what exists as federal regulation. The fundamental tenet of express preemption is that Congress may preclude state involvement, even where it chooses not to regulate. Through its misreading of "other than" the court has imposed a heightened burden on the manufacturers to show implied preemption, despite Congress' express statement of preemption.

The court employs a presumption against preemption — a presumption only triggered by a showing the field to be one traditionally occupied by the states. *United States v. Locke*, 528 U.S. 89, 108 (2001). California alone regulates the uses at issue. California is not big enough single-handedly to generate the presumption. The fate of California's "Fleet Rules" may be augury of what is to come. *See Engine Manufacturers Ass'n v. South Coast Air Quality Management District*, 541 U.S. 246 (2004).

I would affirm the judgment of the district court.