OPINION
KETHLEDGE, Circuit Judge.
ERISA is a statute unique in its preemptive effect. The statute includes an express preemption clause — any state law that “relate[s] to any employee benefit plan” is preempted — which is so broadly worded that the Supreme Court has struggled to draw boundaries around its scope. The statute also preempts state law impliedly, through the doctrine of conflict preemption. That doctrine invalidates state laws to the extent they obstruct the “purposes and objectives” of federal laws; and hence the broader a federal statute’s purpose, the broader its implied-preemptive scope. ERISA’s purpose is among the broadest, if not the broadest, recognized by the Supreme Court: “The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.” Aetna Health Inc. v. Davila, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). Thus, under ERISA, express and implied preemption are so broad as to overlap, laying down converging fields of fire whose intensity is greatest upon a single point: the one held by a state law that purports to mandate the payment of benefits contrary to the terms of an ERISA plan.
*565 That is the ground on which the Wisconsin Family and Medical Leave Act finds itself here. The terms of Nationwide’s plan, whose participants extend across 49 States, allow its administrator to pay “short-term disability” benefits only to Nationwide employees who qualify as short-term disabled as defined by the plan. ERISA then federalizes that limitation, by requiring the administrator to pay benefits only as prescribed in “the documents and instruments governing the plan[.]” 29 U.S.C. § 1104(a)(1)(D). But the Wisconsin Act, as recently applied to Nationwide by the Wisconsin Department of Workforce Development (the ‘Workforce Department”), requires the plan administrator to pay short-term disability benefits to certain beneficiaries who undisputedly are not short-term disabled as defined by the plan. As to those beneficiaries, therefore, the administrator has two choices: violate the Wisconsin Act, or violate ERISA. The district court held that, under the Supremacy Clause of the federal Constitution, the administrator was required to comply with ERISA rather than the Wisconsin Act. We agree, and affirm.
I.
Nationwide has 32,000 employees across the country. Pursuant to an ERISA plan, the company offers its employees certain income benefits while they take leave from work. The Benefits Administrative Committee administers the plan. Among many other things, the Committee determines whether an employee is entitled to benefits under the plan’s terms; and if so, the Committee pays those benefits out of a trust. The plan bars the Committee from paying benefits out of the trust if doing so would violate the plan’s terms.
The plan provides three types of benefits: short-term disability (“STD”), long-term disability (“LTD”), and ‘Your Time” benefits. An employee can receive Your Time benefits for a number of personal reasons, such as vacation or illness. In contrast, to receive STD or LTD benefits, an employee must be “STD Disabled” or “LTD Disabled” as defined by the plan. STD Disabled means “a substantial change in medical or physical condition due to a specific illness that prevents an Eligible Associate from working their current position.” Specific rules govern maternity leave. The first five days of paid maternity leave come out of an associate’s Your Time benefits. Thereafter, a new mother is considered STD Disabled — and thus entitled to STD benefits — for six weeks following a vaginal delivery, or eight weeks following a cesarean section.
Wisconsin’s Family Medical Leave Act requires that employers allow their employees six weeks of unpaid leave following “[t]he birth of an employee’s natural child[.]” Wis. Stat. § 103.10(3). Critically for our purposes, the Act’s “substitution provision” requires employers to allow an employee to substitute “paid or unpaid leave of any other type provided by the employer” for the unpaid leave provided by the statute. Id. § 103.10(5)(b). As recently applied by the Workforce Department, for example, a Nationwide employee could take the six weeks of paid maternity leave provided by the plan, and then substitute an additional three weeks of STD benefits for the unpaid leave provided by the Wisconsin Act — even if the employee is no longer short-term disabled as defined by the plan. Id.
If an employee believes that her employer has violated the Act, she can file a complaint with the Workforce Department, which is empowered to hold a hearing and “take action to remedy the violation, including providing requested family leave or medical leave[.]” Id. § 103.10(12). The employee can also bring a state-law civil *566 action in Wisconsin circuit court once the administrative action is done. Id. § 103.10(13).
Nationwide faced such a complaint in 2007, after one of its Wisconsin employees, Katharina Gerum, had a baby. She received six weeks of STD benefits in accordance with Nationwide’s plan. Gerum then requested an additional period of STD benefits pursuant to the Wisconsin Act’s substitution provision. The Committee denied Gerum’s request on the ground that she was no longer short-term disabled as defined by the plan. Gerum thereafter filed an administrative complaint with the Workforce Department, claiming that the Wisconsin Act required Nationwide to pay the additional STD benefits that she requested. By that time, the Wisconsin Supreme Court had already held that, in its view, ERISA did not preempt the Wisconsin Act even as applied to the administration of ERISA plans. See Aurora Med. Grp. v. Dep’t of Workforce Dev., Equal Rights Div., 236 Wis.2d 1, 612 N.W.2d 646, 654 (2000). The Department also noted, in its investigation of Gerum’s claim, that a Wisconsin circuit court had specifically held that disability-plan benefits are available for substitution under the Wisconsin Act. See N.W. Mut. Life Ins. Co. v. Dep’t of Indus., Labor, & Human Relations, No. 94-CV-001022 (Wis.Cir.Ct., Jan. 16, 1995). The Department thus concluded that there was probable cause to believe that Nationwide’s denial of STD benefits violated the Wisconsin Act. The Department then commenced an administrative proceeding against Nationwide. Eventually, an administrative law judge held that Nationwide had violated the Wisconsin Act when, per the terms of Nationwide’s plan, it declined to pay the additional (ie., more than the six weeks it had already paid) STD benefits to Gerum. The ALJ thus ordered Nationwide to pay her the additional benefits.
At that point Nationwide sought to clarify its obligations under federal and Wisconsin law. Specifically, Nationwide filed this lawsuit in federal district court in Columbus (where its headquarters is located), seeking a declaration that ERISA preempted the Wisconsin Act to the extent the Act requires payment of STD benefits to employees who are not STD disabled under the terms of Nationwide’s plan. Nationwide also sought an injunction to that effect. In a notably thorough opinion, the district court held that, as applied against Nationwide to require the payment of STD benefits contrary to Nationwide’s plan, the Wisconsin Act was expressly and impliedly preempted in several different ways. The court therefore granted Nationwide the relief it requested and entered judgment in its favor.
This appeal followed.
II.
A.
We begin with the question whether the Wisconsin Act, as applied to Nationwide’s plan, is expressly preempted. ERISA’s express-preemption provision states that, with certain exceptions not relevant here (e.g., for state laws that regulate insurance), ERISA “shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]” 29 U.S.C. § 1144(a). Congress meant for this section “to ensure that plans and plan sponsors would be subject to a uniform body of benefits law[.]” Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).
A state law “relate[s] to” an ERISA plan, within the meaning of § 1144(a), if the state law “has a connection with or reference to such a plan.” *567 Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (internal quotation marks omitted). State laws have such a connection or reference — and are therefore preempted— if, among other things, they (i) “mandate[ ] employee benefit structures[,]” N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 658, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); (ii) “interfere! ] with nationally uniform plan administration!,]” Egelhoff, 532 U.S. at 148, 121 S.Ct. 1322; or (iii) create “alternative enforcement mechanisms” for the recovery of benefits provided under an ERISA plan. Travelers, 514 U.S. at 658, 115 S.Ct. 1671.
The Wisconsin Act, as applied to require the payment of STD benefits contrary to the terms of Nationwide’s plan, does all three of these things. First, state laws mandate “employee benefit structures” when, among other things, they require plan administrators to “pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents.” Egelhoff, 532 U.S. at 147, 121 S.Ct. 1322. Indeed, the Supreme Court “ha[s] virtually taken it for granted that state laws which are ‘specifically designed to affect employee benefit plans’ are preempted under § [1144](a).” Ingersoll-Rand, 498 U.S. at 140, 111 S.Ct. 478 (quoting Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 829, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)). The Wisconsin Act is undisputedly such a law: it mandates payment of STD benefits to employees who are not STD disabled, contrary to the terms of the plan. Thus, the Act “governs the payment of benefits, a central matter of plan administration!,]” Egelhoff, 532 U.S. at 148, 121 S.Ct. 1322— and for that reason is expressly preempted as applied here.
Second, the Act interferes with uniform administration of Nationwide’s plan in the 49 states where it operates. State laws have this effect when they subject plans “to different legal obligations in different States.” Id. The Wisconsin Act has that effect here, since it requires the plan administrator to pay benefits (ie., STD benefits to Wisconsin employees who are not short-term disabled) that the plan itself bars the administrator from paying in other States. The Wisconsin Act therefore “impose[s] precisely the burden that ERISA pre-emption was intended to avoid!,]” id. at 150,121 S.Ct. 1322 (internal quotation marks omitted); and for that reason too is expressly preempted as applied here.
Third, the Wisconsin Act creates an alternate enforcement mechanism for obtaining ERISA plan benefits. “Congress intended” ERISA’s civil-enforcement provision, 29 U.S.C. § 1132(a), “to be the exclusive remedy for rights guaranteed under ERISA[.]” Ingersoll-Rand, 498 U.S. at 144, 111 S.Ct. 478. The Court has explained that “the detailed provisions of § [1132](a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.” Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). That balancing “would be completely undermined” if states were free to put additional remedies on one side of the scale. Id. Thus, “any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.” Davila, 542 U.S. at 209, 124 S.Ct. 2488. Again, the Wisconsin Act undisputedly has that effect here: *568 by its plain terms, § 103.10(12) authorizes employees to file administrative complaints, and § 103.10(13) authorizes employees to file lawsuits in state court, to obtain benefits provided by Nationwide’s ERISA plan. Thus, for this reason as well, the Wisconsin Act is expressly preempted as applied here.
The Act is also impliedly preempted as applied here because it conflicts with ERISA. “Conventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Boggs v. Boggs, 520 U.S. 833, 844, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (internal quotation marks and ellipses omitted). Here again the Wisconsin Act runs the table of reasons for preemption. The first is impossibility. ERISA “commands that a plan shall ‘specify the basis on which payments are made to and from the plan,’ § 1102(b)(4), and that the fiduciary shall administer the plan ‘in accordance with the documents and instruments governing the plan,’ § 1104(a)(l)(D)[.]” Egelhoff, 532 U.S. at 147, 121 S.Ct. 1322. But the Wisconsin Act, as applied here, tells the administrator to pay benefits contrary to the terms of the plan, rather than “in accordance” with them. The Act therefore imposes conflicting obligations upon the plan administrator — if the administrator complies with one obligation, it violates the other — and thus the Act is preempted to that extent.
The Act also obstructs the “full purposes and objectives” of ERISA. As shown above, the Act “interferes with nationally uniform plan administration[,]” id. at 148, 121 S.Ct. 1322, upsets the “careful balanc[e]” struck by ERISA’s comprehensive and exclusive civil-enforcement remedy, Pilot Life, 481 U.S. at 54, 107 S.Ct. 1549, and arrogates to Wisconsin the power to regulate ERISA benefit plans, which Congress intended to be “exclusively a federal concern.” Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). Thus, the Wisconsin Act is preempted in no less than five different ways: three of them express, two' of them implied — and each of them an independent reason that compels us to hold the Act invalid as applied here.
B.
Wisconsin offers several responses. One is that we should apply a presumption against preemption because, Wisconsin says, its Act regulates family law, which is traditionally an area of state regulation. See Egelhoff, 532 U.S. at 151, 121 S.Ct. 1322. We have our doubts about that premise. In contrast to Egelhoff, which concerned a probate statute, the Wisconsin Act regulates plan benefits qua benefits— which assuredly is an area of federal concern. But we need not characterize the Wisconsin Act here. The Supreme Court has “not hesitated to find state family law pre-empted when it conflicts with ERISA or relates to ERISA plans.” Id. As shown above, the Wisconsin Act does those things in five different ways, so we likewise do not hesitate to find the Act preempted as applied here.
The State’s primary argument is that the Act is revived by § 1144(d) of ERISA, which provides in full:
Nothing in [ERISA] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.
This provision is a curious one to cite in defense of the Wisconsin Act, since it saves *569 only federal laws rather than state ones from preemption. But Wisconsin contends that preemption of the Wisconsin Act, as applied here, would impair the Federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq. That assertion too is curious, since the FMLA undisputedly does not mandate the substitution of employer-provided leave benefits the way the Wisconsin Act does. Thus, the Wisconsin Act prohibits what the FMLA permits (¿a, non-substitution of employer-provided leave benefits); and the Supreme Court has already told us, in yet another ERISA preemption case, that “[w]e fail to see how federal law would be impaired by preemption of a state law prohibiting conduct that federal law permitted.” Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103-104, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).
Nor does the FMLA’s own savings clause have any application here, since that clause reiterates four times that it saves state law only from preemption by the FMLA itself. The clause provides in full: “Nothing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act.” 29 U.S.C. § 2651(b). The term “this Act” is as unambiguous as any in the United States Code; and here too the Supreme Court has already told us that “this Act,” as used in a savings clause, does not “alter the pre-emptive effect” of any Act but the one in which it appears. United States v. Locke, 529 U.S. 89, 106, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000).
Nor, contrary to Wisconsin’s suggestion, does § 2652(b) of the FMLA have any application here. That provision provides in full: “The rights established for employees under this Act or any amendment made by this Act shall not be diminished by any collective bargaining agreement or any employment benefit program or plan.” (Emphasis added). Again, “this Act” refers unambiguously to the FMLA, not the Wisconsin Act; and thus § 2652(b) does nothing to save the Wisconsin Act from diminution. Wisconsin’s argument that federal law somehow saves the Wisconsin Act from preemption, therefore, has no basis in any provision of the United States Code.
Wisconsin thus argues that its Act is saved by legislative history alone — namely, two sentences from a Senate Report and a putative colloquy between three Senators. That history, Wisconsin says, shows that one purpose of the FMLA was to encourage states to mandate benefits more generous than those mandated by the FMLA itself; and preemption of the Wisconsin Act as applied here would “impair” that purpose within the meaning of § 1144(d) of ERISA.
This argument fails for a host of reasons. The first is that the FMLA actually recites its purposes — and this one is not among them. See 29 U.S.C. § 2601(b). The second reason is pedestrian: as the Supreme Court reminded us in a preemption case just two Terms ago, and “as [the Court] ha[s] said before, Congress’s ‘authoritative statement is the statutory text, not the legislative history.’ ” Chamber of Commerce v. Whiting, — U.S.—, 131 S.Ct. 1968, 1980, 179 L.Ed.2d 1031 (2011) (quoting Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005)). The exception, of course, is where the legislative history helps to explain the meaning and purpose of a provision whose text is genuinely ambiguous. See Allapattah, 545 U.S. at 567, 125 S.Ct. 2611. As shown above, however, there is no ambiguity here; and otherwise the text of the FMLA does not *570 establish the statutory value that Wisconsin asks us to enforce.
The third reason has to do with the quality of the materials themselves. The colloquy is purportedly a 1993 exchange between Senators Feingold and Kohl (both representing Wisconsin at the time), on the one hand, and Senator Dodd (the Senate sponsor of the FMLA), on the other. The Wisconsin Senators each ask, “[i]s it the intent of the sponsors of’ the FMLA that ERISA “shall not” preempt the substitution provision of the Wisconsin Act; and Senator Dodd in each instance duly answers yes. 139 Cong. Rec. 2254 (1993). But the idea that this colloquy ever passed the lips of any Senator is an obvious fiction. Colloquies of this sort get inserted into the Congressional Record all the time, usually at the request of a lobbyist; and here virtually the same colloquy, with verbatim much of the same stilted phrasing, appeared in the Congressional Record two years before, in connection with a predecessor bill that the President vetoed. See 137 Cong. Rec. 25,019-20 (1991). The principal difference between the two colloquies is that the later one assigns to Senator Feingold (who had just been elected) some of the questions that Senator Kohl is shown to ask in the earlier one. Thus, from the 1993 colloquy, one can reasonably conclude, at most, that the Wisconsin Senators sought to protect their State’s Act from preemption by ERISA, and that Senator Dodd was willing to oblige by lending his name to the colloquy — though not, apparently, by amending the FMLA to that effect. But the idea that this colloquy reflects the intent of Congress as a whole is as fictional as the colloquy itself.
Wisconsin’s other piece of legislative history is the Senate Committee Report for the FMLA, which contains two sentences that Wisconsin flags for us here. One is that “[sjection 401(b) [§ 2651(b) of the bill as enacted] makes it clear that state and local laws providing greater leave rights than those provided in [the FMLA] are not preempted by the bill or any other federal law.” S.Rep. No. 103-3, at 38 (1993), 1993 U.S.C.C.A.N. 3, 40. But § 2651(b) does not say anything about preemption by other federal statutes, since it reiterates four times that it saves state law only from preemption by the FMLA (“this Act”) itself. The House Report agrees with us: it includes the same sentence without the reference to “any other federal law[,]” H.R.Rep. No. 103-8(1), at 50 (1993) — which is to say that the House Report reads § 2651(b) to mean what it says.
The other sentence from the Senate Report (which the House Report omits, to its credit) is that “[s]ection 401(b) also clarifies that state family leave laws at least as generous as that [sic] provided in [the FMLA] (including leave laws that provide continuation of health insurance or other benefits, and paid leave), are not preempted by ERISA, or any other federal law.” S.Rep. No. 103-3, at 38. As shown above, however, § 2651(b) says nothing about ERISA or “any other federal law”; instead § 2651(b) refers only to the FMLA. This sentence from the Report thus purports to rewrite § 2651(b) rather than clarify it. The Supreme Court has warned us against relying upon precisely this kind of legislative history. See Allapattah, 545 U.S. at 568, 125 S.Ct. 2611 (“committee reports, which are not themselves subject to the [bicameralism and presentment] requirements of Article I, may give unrepresentative committee members — or, worse yet, unelected staffers and lobbyists — both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text”).
Wisconsin’s reliance on legislative history is also misplaced for a fourth reason: it *571 offers no answer to the reasons the Wisconsin Act is conflict-preempted as applied here. So applied, as shown above, the Wisconsin Act imposes conflicting obligations on the Nationwide plan administrator, interferes with nationally uniform plan administration, renders ERISA’s exclusive enforcement remedy non-exclusive, and injects state law into an area (regulation of ERISA benefit plans) that the Supreme Court has said is “exclusively a federal concern.” Davila, 542 U.S. at 208, 124 S.Ct. 2488 (internal quotation marks omitted). Thus, the Supreme Court’s observations in another preemption case are apposite here:
Why, in any event, would Congress not have wanted ordinary pre-emption principles to apply where an actual conflict with a federal objective is at stake? Some such principle is needed. In its absence, state law could impose legal duties that would conflict directly with federal regulatory mandates.... To the extent that such an interpretation of the saving provision reads into a particular federal law toleration of a conflict that those principles would otherwise forbid, it permits that law to defeat its own objectives, or potentially, as the Court has put it before, to “destroy itself.”
Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 871-72, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (quoting AT & T Co. v. Cent. Office Tel, Inc., 524 U.S. 214, 228, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998)). Our conclusion is the same as the Supreme Court’s in Geier. the federal statute does not tolerate this sort of conflict with state law.
We have no basis, therefore, to conclude that preemption of the Wisconsin Act, as applied here, would impair the FMLA. And we have every reason to conclude that non-preemption would impair ERISA — notably § 1144(a) and the statute’s objectives as set forth in literally dozens of Supreme Court cases. The lawful result in this case is to hold the Wisconsin Act preempted to the extent it requires Nationwide’s administrator to pay STD benefits contrary to the terms of Nationwide’s plan.
C.
That conclusion is dispositive of this appeal: the district court’s balancing of the four-factor test for injunctive relief was otherwise reasonable, see Jolivette v. Husted, 694 F.3d 760, 765 (6th Cir.2012); and the defendants are not entitled to immunity under the Eleventh Amendment because the plaintiffs requested, and the district court awarded, only prospective, injunctive relief. See Diaz v. Mich. Dep’t of Corr., 703 F.3d 956, 964 (6th Cir.2013).
The district court’s judgment is affirmed.